UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                      Plaintiff,

            - against –

REAL PROPERTY LOCATED AT
110 MAPLE STREET, MEDFORD,
NEW YORK 11763, DISTRICT- 0200,
SECTION 86900, BLOCK 0100, LOT 037000,

REAL PROPERTY LOCATED AT
108 MAPLE STREET, MEDFORD,
NEW YORK 11763 DISTRICT- 0200,
SECTION 86900, BLOCK 0100, LOT 036000,

REAL PROPERTY LOCATED AT
26 ASHTON ROAD, MEDFORD,
NEW YORK 11763 DISTRICT- 0200,
SECTION 52800, BLOCK 0600, LOT 005000,

REAL PROPERTY LOCATED AT
5 CHERRY BETH LANE, MANORVILLE,
NEW YORK 11949, DISTRICT- 0200,
SECTION 55800, BLOCK 0200, LOT 019002,

REAL PROPERTY LOCATED AT
ASHTON ROAD LOT, MEDFORD,
NEW YORK 11763 DISTRICT- 0200,
SECTION 54700, BLOCK 0100, LOT 006001,

REAL PROPERTY LOCATED AT
85 ADAMS STREET, UNIT 11A,
BEACON TOWER CONDOMINIUM,
BROOKLYN, NEW YORK 11201
SECTION 1, BLOCK 52, TAX LOT 1037,

**SUBMITTED UNDER SEAL**

**AMENDED**
**VERIFIED COMPLAINT IN REM**
Civil Action No. 12-2055
(LDW)(GRB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 30 2012   ★

LONG ISLAND OFFICE

1

REAL PROPERTY LOCATED AT
8861 COLLONADES COURT UNIT #232,
BONITA SPRINGS, FLORIDA 34135
PARCEL 472521B2034020232, LEE COUNTY,
BOOK NUMBER 004749, PAGE 004116,

REAL PROPERTY LOCATED AT
3802 ALBACETE CIRCLE, #65,
PUNTA GORDA, FLORIDA 33950
PARCEL 412320802025, VGB 000-0033-0065,
CHARLOTTE COUNTY,

REAL PROPERTY LOCATED AT
3804 ALBACETE CIRCLE, #66,
PUNTA GORDA, FLORIDA 33950
PARCEL 412320802026, VGB 000-0033-0066,
CHARLOTTE COUNTY,

REAL PROPERTY LOCATED AT
1340 ROCK DOVE COURT, UNIT 121,
PUNTA GORDA, FLORIDA 33950
PARCEL 412213807001, OLC-000-0000-0121,
CHARLOTTE COUNTY,

REAL PROPERTY LOCATED AT
388 CYPRESS WAY WEST,
HORSE CREEK ESTATES, LOT 103
NAPLES, FLORIDA 34110
PARCEL 50940011400, COLLIER COUNTY
LOT 103, BOOK NUMBER 004079, PAGE 001522,

ANY FUNDS ON DEPOSIT AT CHASE
BANK, ACCOUNT NUMBER
938572840 HELD IN THE NAME OF
JOHN P. FRANZ, AND ALL PROCEEDS
TRACEABLE THERETO,

ANY FUNDS ON DEPOSIT AT CHASE
BANK, ACCOUNT NUMBER
3140259058 HELD IN THE NAME OF
JPF ENTERPRISES AND ALL PROCEEDS
TRACEABLE THERETO,

2

ANY FUNDS ON DEPOSIT AT CHASE
BANK, ACCOUNT NUMBER
3140259694 HELD IN THE NAME OF
JOHN P. FRANZ AND ALL PROCEEDS
TRACEABLE THERETO,

ANY FUNDS ON DEPOSIT AT ORION
BANK, ACCOUNT NUMBER
8500032613 HELD IN THE NAME OF
JOHN P. FRANZ AND ALL PROCEEDS
TRACEABLE THERETO,

ANY FUNDS ON DEPOSIT AT
BANK OF AMERICA, ACCOUNT
NUMBER 483030098405 HELD IN
THE NAME OF RICHARD MASTROENI
AND ALL PROCEEDS TRACEABLE
THERETO,

ONE 1998 CHEVROLET CORVETTE
VIN 1G1YY32G5W5105905
REGISTERED TO JOHN P. FRANZ,

ONE 1984  PORSCHE CARRERA
VIN WP0EB0913ES170134
REGISTERED TO JOHN P. FRANZ, and

ONE 2001 37- FOOT OUTER LIMITS
BOAT, HIN 0PL37054H001
REGISTERED TO JOHN P. FRANZ

Defendants.
-------------------------------------------------------------X

Plaintiff United States of America, by its attorney LORETTA E. LYNCH, United States

Attorney for the Eastern District of New York, Diane Leonardo Beckmann, Assistant United

States Attorney, of counsel, alleges upon information and belief as follows:

3

## PRELIMINARY STATEMENT

1.      This is a civil action in rem to forfeit and to condemn to the use of the United States of America the above captioned Defendant Real Properties (collectively the "Defendant Real Properties"), Bank Accounts (collectively the "Defendant Bank Accounts"), Motor Vehicles (collectively the "Defendant Motor Vehicles") and Boat (the "Defendant Boat") in accordance with 21 U.S.C. §§ 881(a)(6) and (7), as property which was used or intended to have been used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 et seq., or moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title 21.

2.      The above captioned Defendant Real Properties and Defendant Bank Accounts are also subject to forfeiture under 31 U.S.C. § 5317 (c)(2) as property involved in a violation of 31 U.S.C. § 5324.

3.      The above captioned Defendant Real Properties, Defendant Bank Accounts, Defendant Motor Vehicles and Defendant Boat are also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.

## JURISDICTION

4.      Plaintiff brings this action in rem in its own right pursuant to 21 U.S.C. §§ 881(a)(6) and (7); 31 U.S.C. § 5317 (c)(2); and 18 U.S.C. § 981 (a)(1)(A).

4

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and

1355.

## VENUE

6.      Venue is proper in this district pursuant to 21 U.S.C. § 881(j), and 28 U.S.C.

§1355.

## THE DEFENDANTS IN REM

7.      The Defendant Real Property at 110 Maple Street, Medford, New York 11763

("110 Maple Street") consists of the real property, together with its respective buildings,

appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as

DISTRICT- 0200, SECTION 86900, BLOCK 0100, LOT 037000 on the Suffolk County Tax

Map.  All right, title and interest in the property at 110 Maple Street is owned by John P. Franz.

8.      The Defendant Real Property at 108 Maple Street, Medford, New York 11763

("108 Maple Street") consists of the real property, together with its respective buildings,

appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as

DISTRICT- 0200, SECTION 86900, BLOCK 0100, LOT 036000 on the Suffolk County Tax

Map.  All right, title and interest in the property located at 108 Maple Street is owned by Richard

Mastroeni.

9.      The Defendant Real Property at 26 Ashton Road, Medford, New York 11763 ("26

Ashton Road") consists of the real property, together with its respective buildings,

appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as

DISTRICT- 0200, SECTION 52800, BLOCK 0600, LOT 005000 on the Suffolk County Tax

Map.  All right, title and interest in the property at 26 Ashton Road is owned by John P. Franz.

10.     The Defendant Real Property at 5 Cherry Beth Lane, Manorville, New York 11949 ("5 Cherry Beth Lane") consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as DISTRICT- 0200, SECTION 55800, BLOCK 0200, LOT 019002 on the Suffolk County Tax Map. All right, title and interest in the property at 5 Cherry Beth Lane is owned by John P. Franz.

11.     The Defendant Real Property at Ashton Road Lot, Medford, New York 11763 ("Ashton Road Lot") consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as DISTRICT- 0200, SECTION 54700, BLOCK 0100, LOT 006001on the Suffolk County Tax Map. All right, title and interest in the property at the Ashton Road Lot is owned by John P. Franz.

12.     The Defendant Real Property at 85 Adams Street, Unit 11A, Beacon Tower Condominiums, Brooklyn, New York 11201 ("85 Adams, Unit 11A) consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as SECTION 1, BLOCK 52, TAX LOT 1037 on the Kings County Tax Map. All right, title and interest in the property at 85 Adams, Unit 11A is owned by John P. Franz.

13.     The Defendant Real Property at 8861 Collonades Court, Unit 232, Bonita Springs, Florida 34135 ("8861 Collanades Court") consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as Parcel 472521B2034020232, Lee County, Book Number 004749,

6

page 004116. All right, title and interest in the property at 8861 Collonades Court is owned by John P. Franz.

14.     The Defendant Real Property at 3802 Albacete Circle, Unit 65, Punta Gorda, Florida 33950 ("3802 Albacete Circle") consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as Parcel Number 412320802025, VGB 000-0033-0065, Charlotte County. All right, title and interest in the property at 3802 Albacete Circle is owned by John P. Franz.

15.     The Defendant Real Property at 3804 Albacete Circle, Unit 65, Punta Gorda, Florida 33950 ("3804 Albacete Circle") consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as Parcel Number 412320802026, VGB 000-0033-0066, Charlotte County. All right, title and interest in the property at 3804 Albacete Circle is owned by John P. Franz.

16.     The Defendant Real Property at 1340 Rock Dove Court, Unit 121, Punta Gorda, Florida 33950 ("1340 Rock Dove Court") consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as Parcel Number 412213807001, OLC-000-0000-0121, Charlotte County. All right, title and interest in the property at 1340 Rock Dove Court is owned by John P. Franz.

17.     The Defendant Real Property at 388 Cypress Way West, Naples, Florida 34110 ("388 Cypress Way West") consists of the real property, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as Parcel Number 50940011400, Collier County, Horse Creek Estates, Lot 103, Book Number

004079, page 001522. All right, title and interest in the property at 388 Cypress Way West is owned by John P. Franz.

18.   Defendant Bank Account at Chase Bank, Account number ending in -2840, is owned by John P. Franz.

19.   Defendant Bank Account at Chase Bank, Account number ending in -9058, is owned by John P. Franz.

20.   Defendant Bank Account at Chase Bank, Account number ending in -9694, is owned by John P. Franz.

21.   Defendant Bank Account at Orion Bank, Account number ending in -2613 is owned by John P. Franz.

22.   Defendant Bank Account at Bank of America, Account number ending in -8405 is owned by Richard Mastroeni.

23.   Defendant Motor Vehicle, one 1998 Chevrolet Corvette, New York Registration IVOYEUR2, Vehicle Identification number 1G1YY32G5W5105905, is owned by John P. Franz.

24.   Defendant Motor Vehicle, one 1984 Porsche Carrera, New York Registration IVOYEUR3, Vehicle Identification number WP0EB0913ES170134, is owned by John P. Franz.

25.   Defendant Boat, one 2001 37 Foot Outer Limits Boat, New York Registration 7601 FM, Hull Identification Number 0PL37054H00, is owned by John P. Franz.

## STATUTORY BACKGROUND

26.   Pursuant to Title 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances

8

Act, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of the Controlled Substances Act are subject to forfeiture.

27.     Pursuant to 21 U.S.C. § 881(a)(7), all real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§841 et seq., or any property traceable to such property, is subject to forfeiture to the United States.

28.     Pursuant to 21 U.S.C. § 881(a)(4), all conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of property described in paragraph (1), (2) or (9), is subject to forfeiture to the United States.

29.     Pursuant to 31 U.S.C. § 5312(a)(2)(v), the United States Postal Service ("USPS") is a "financial institution" within the meaning of 31 U.S.C. § 5325(a). Pursuant to Section 5325(a), no financial institution may issue or sell a money order to any individual in connection with a transaction or group of contemporaneous transactions which involves United States currency in amounts or denominations of $3,000 or more unless the individual has an account at the financial institution and complies with certain other requirements, or the individual furnishes the financial institution with identification as prescribed by Treasury Department regulations and the financial institution records this information as prescribed by Treasury Department regulations. Purchasers of money orders issued by the USPS are not considered "account holders" of the USPS within the meaning of this provision. Pursuant to 31 U.S.C. § 5324(a)(3),

9

no person may, for the purpose of evading the requirements of Section 5325(a), structure any transaction with a financial institution.

30.     Pursuant to 31 U.S.C. § 5317 (c)(2) any property involved in a violation of 31 U.S.C. § 5324 or any conspiracy to commit such violation and any property traceable to such a violation or conspiracy, may be seized and forfeited to the United States.

31.     Pursuant to 18 U.S.C. § 981 (a)(1)(A) any property, real or personal, involved in a transaction, or attempted transaction in violation of §§1956 and 1957 or any property traceable to such property is subject to forfeiture to the United States.

## FACTS

32.     Since October 2009, members of the Suffolk County Asset Forfeiture Unit – Suffolk Treasury Enhanced Prosecution ("STEPP") Task Force, comprised of officers of the Suffolk County Police Department ('SCPD") and special agents of Internal Revenue Service ("IRS"), in conjunction with the United States Postal Inspection Service, have been investigating the drug trafficking activities of John P. Franz and his associates.  The investigation has revealed that John P. Franz illegally produces and distributes marijuana.  The investigation has further revealed that, among his drug trafficking activities, John P. Franz is responsible for managing a local marijuana growing operation within several residential homes in Suffolk County, New York.

33.     Specifically, as discussed below, there is probable cause to believe that the defendant John P. Franz owns and operated a marijuana grow house located at 110 Maple Street, and supervises marijuana grow house operations located at 26 Ashton Road and 5 Cherry Beth

10

Lane. Richard Mastroeni is the next door neighbor and partner of John P Franz who resides at

and operated a marijuana grow house located at the 108 Maple Street premises. Richard

Mastroeni oversees the marijuana grow house operation at the 5 Cherry Beth Lane premises.

34.    The investigation also revealed that John P. Franz purchased the Defendant Real

Properties, Defendant Motor Vehicles and Defendant Boat with the proceeds of the marijuana

grow operation. A review of the Defendant Bank Accounts revealed that John P. Franz

deposited the proceeds of the marijuana grow operation into various bank accounts by

structuring cash deposits. John P. Franz also purchased over one million dollars in structured

money orders to pay mortgages, lines of credit and expenses on the Defendant Real Properties

(excluding 108 Maple Street which is owned by Richard Mastroeni).

**Confidential Source**

35.    On October 30, 2009, a Confidential Source ("CS1") was interviewed by

members of the STEPP Task Force. At that time and on subsequent occasions, CS1 provided the

STEPP Task Force with certain information about John P. Franz's drug trafficking organization.

36.    CS1 stated that in or about and between September 2005 and December 2008,

he/she worked as an employee of John P. Franz principally in his marijuana grow house

operations at 26 Ashton Road. During this time period, CS1 was mainly responsible for

harvesting marijuana plants at 26 Ashton Road and then transporting the dried plants about every

three weeks from 26 Ashton Road to 110 Maple Street where the plants would be packaged for

distribution. CS1 also reported that in February 2009, he/she harvested approximately 50

marijuana plants on one occasion at 110 Maple Street. CS1 stated that during his/her tenure

11

working for John P. Franz, Franz told him/her that he has been dealing marijuana heavily for at least approximately the last ten years and has never had a real job.

37.    CS1 stated that in September 2005, he/she assisted John P. Franz in preparing 26 Ashton Road for a marijuana grow operation. Specifically, CS1 stated that he/she was involved in the preparation of the premises' basement for growing marijuana, which included painting the basement white and setting up tables on which the plants would grow. Thereafter, for approximately three years, CS1 was responsible for cloning, watering, fertilizing, trimming and harvesting the marijuana plants at 26 Ashton Road.

38.    Cloning is the process by which indoor marijuana growers select a few strong, healthy, female plants that they keep separate and never harvest. Growers are able to constantly cut branch tips from the female plants to make clones. These plants are commonly referred to as "moms" or "mother" plants. Female plants are more desirable in marijuana grow operations because unpollinated female buds continue to swell and produce more resin while waiting for male pollen to complete their life cycle. After weeks of heavy flower and cannabinoid-laden resin production, THC production peaks out of the female plants and is harvested. THC is tetrahydrocannibinol – the primary intoxicant in marijuana.

39.    CS1 identified 110 Maple Street as John P. Franz's residence and the base of his marijuana grow house operations. CS1 first observed the marijuana grow operations within 110 Maple Street in or about the beginning of 2006. Based upon CS1's observations in or about the beginning of 2006 through and including December 2008 and in February 2009, CS1 described 110 Maple Street as a location that contained a large marijuana grow operation in its basement

and had approximately 15 grow lights over approximately 10 to 12 tables which accommodated 50 plants each.  CS1 estimated that the total growing capacity at this location was approximately between 3,000 and 5,000 marijuana plants at various stages of their grow cycle.  CS1 estimated that the value of this basement's crop every three weeks was approximately $170,000.  This figure is based upon CS1's estimate that approximately 340 plants each valued at $500 were harvested every three weeks.

40.     CS1 explained that 110 Maple Street was the location at which John P. Franz gathered all of the harvested marijuana from his various grow house residences.  When harvested marijuana plants arrived at 110 Maple Street, they were weighed, packaged and then distributed. CS1 stated that John P. Franz's other grow house residences included 108 Maple Street, 26 Ashton Road and a house in Manorville, subsequently identified by law enforcement as 5 Cherry Beth Lane.  CS1 advised that during his/her tenure as a worker at 26 Ashton Road, it was part of his/her job to trim and dry the marijuana plants harvested at 26 Ashton Road and transport them to 110 Maple Street for weighing and packaging.

41.     CS1 advised that John P. Franz routinely oversaw the packaging of approximately one-quarter pound of marijuana into one-gallon ziplock bags at 110 Maple Street.  CS1 stated that four of these ziplock bags were placed into one oven turkey roaster plastic bag to make one pound packages for easy distribution.

42.     Using the equipment that John P. Franz gave to him/her, CS1 set up 13 high intensity grow lights on one side of the 26 Ashton Road premises' basement over seven tables. According to CS1, a male electrician came over and set up all of the electrical connections, lights

13

and fans.  CS1 advised that the electrician in setting up the electrical connections, was able to bypass the electrical meter.  According to CS1, John P. Franz told him/her that there is a yellow plug that CS1 was supposed to pull out of the electrical outlet located in the attached garage of the 26 Ashton Road premises if Long Island Power Authority ("LIPA") is around.

43.     CS1 also stated that based upon his/her conversations with John P. Franz, he/she knows that Franz partnered with his next door neighbor, Richard Mastroeni, who operates another marijuana grow house at Mastroeni's residence located at 108 Maple Street.  CS1 also observed Mastroeni assist John P. Franz in removing marijuana plants from 26 Ashton Road in 2008.  According to CS1, John P. Franz told him/her in or about July 2008 that Mastroeni had been operating a grow house at 108 Maple Street for approximately ten years.

**The Marijuana Grow House at 110 Maple Street**

44.     On October 23, 2009, a member of the STEPP Task Force recovered, among other things, the following items from a garbage can located on the street at the end of the driveway of the 110 Maple Street premises: (a) handwritten notes that describe items such as "fert., bulbs, stack wood, flats, sprinklers, change fans" and (b) a quantity of a green plant-like substance that tested positive in the SCPD laboratory for the presence of marijuana.

45.     Upon information and belief, the items referenced in paragraph 44 (a) are utilized in marijuana grow house operations.  In particular, the term "stack wood," "flats" and "change fans" refers to items used in the process of drying fresh marijuana which is laid out on screens or flats in a dry room with a fan blowing on it.  "Fert." refers to fertilizer used to supplement marijuana plants with nutrients that would ordinarily be available when plants are grown in soil.

14

"Bulbs" refers to the high intensity light bulbs used to simulate the sunlight needed to grow marijuana plants. Finally, indoor marijuana manufacturers typically keep their marijuana plants sufficiently hydrated by utilizing a system of holding tanks, pumps, tubes or hoses and "sprinklers";

46. On February 23, 2010, a member of the STEPP Task Force recovered from a garbage can located on the street at the end of the driveway of 110 Maple Street, among other things:

(a) handwritten notes containing terms such as "Einstein," a likely reference to Einstein Oil Leaf Shine which is a specialized plant oil commonly used by marijuana manufacturers as a natural bug insecticide; "New Moms," a reference to new clones taken from the mother marijuana plant; "stack wood," as described above; and "Re/Nute" or "Re/Nu," a reference to checking the nutrients in the water that feeds the marijuana plants.

(b) a quantity of a green plant-like substance that tested positive in the SCPD laboratory for the presence of marijuana.

47. On March 12, 2010, a member of the STEPP Task Force recovered from two garbage cans located on the street at the end of the driveway of 110 Maple Street, among other things, the following items which are frequently and routinely used in the marijuana growing industry:

(a) a quantity of a green plant-like substance that tested positive in the SCPD laboratory for marijuana;

(b) a ziplock bag containing cigar tobacco. Marijuana smokers often hollow out the tobacco contained in cigars and re-fill them with marijuana;

(c) a plastic cigar wrapper that contains a quantity of a green plant-like substance that tested positive in the SCPD laboratory for marijuana;

(d) numerous blue plastic gloves containing green plant residue;

(e) four plastic wrappers for "GRODAN starter A-OK" hydro plugs. Hydro plugs are a growing medium commonly used in indoor marijuana cultivation. Hydro plugs are pre-formed and facilitate cloning and growing marijuana plants. Each wrapper originally contained 100 plugs capable of hydroponically growing 400 marijuana clones from mother plants;

(f) one empty bottle of "Einstein Oil Leaf Shine;"

(g) two empty cans of Spectracide indoor bug stop box and fogger;

(h) one empty extra strength "Febreze" bottle. Upon information and belief, marijuana grow operators need to mask the strong marijuana odor with odor maskers or eliminators, such as Febreze, in an effort to avoid detection;

(i) one empty box of 40 one-gallon ziplock bags and two empty boxes of ten 16 inch x 17.5 inch plastic oven bags. Large scale indoor marijuana manufacturers commonly package large amounts of marijuana in one-gallon ziplock bags and other assorted plastic bags;

(j) handwritten notes referencing terms such as "bananas," a reference to the male marijuana plant developing pollen sacks that are greenish-yellow, grow on a short spike, and hang in clusters at the base of the branches; "pumps," a reference to the water pumps used to circulate the nutrient-rich water onto the marijuana plants; "Richard when next LIPA reading," a

16

common inquiry among marijuana grow operators who often keep tabs on when meter readers will be present on their property so that they can shut down appliances, such as air conditioners, that use large amounts of electric current in order to avoid suspicion;

(k) one receipt for the purchase of a Blackberry personal data assistant in the name of "John Franz;"

(l) one receipt for Xtreme Chemical Company, www.xccinc.com, which sells online all purpose concentrated non-toxic cleaners.

48.     On January 9, 2012, a member of the STEPP Task Force recovered from one garbage can located in the street at the end of the driveway of 110 Maple Street, among other things, the following items which are frequently and routinely used in the marijuana growing industry:

(a) a quantity of a green plant-like substance that tested positive in the SCPD laboratory for the presence of marijuana; and

(b) a set of broken cutting shears with green residue which are typically used in trimming marijuana plants.  The green residue field-tested positive for the presence of marijuana.

49.     On April 26, 2012, law enforcement officers executed a search warrant issued by the Honorable William D. Wall on April 13, 2012, at the 110 Maple Street premises. The search of the premises uncovered an approximate gross weight of 28 pounds of marijuana in bags found in the basement of the premises.  The bags included approximately three black plastic garbage bags, one blue plastic bag and approximately four clear plastic bags.  The search also uncovered in the basement of the premises equipment commonly used to operate marijuana grow

17

houses, including numerous grow lights, fans, ballasts and an electrical bypass.  The equipment was set up in a manner consistent with the active marijuana grow operations found at the 26 Ashton Road premises and the 5 Cherry Beth Lane premises described below.  The search further uncovered a total of approximately $148,600 in United States currency found in John P. Franz's home music studio, including approximately $110,000 in a guitar case, approximately $10,500 under a desk in a brown paper bag and approximately $28,100 on the desk.

**The Marijuana Grow House at 108 Maple Street**

50.    On February 23, 2010, a member of the STEPP Task Force recovered from a garbage can located on the street to the left of the end of the driveway of 108 Maple Street, among other things, a quantity of a green plant-like substance that tested positive by the SCPD laboratory for the presence of marijuana.

51.    Two years later, on February 28, 2012, a member of the STEPP Task Force recovered from two garbage cans located in the street to the right side of the end of the driveway of 108 Maple Street  among other things: (a) a quantity of a green plant-like substance within a brown floral knitted pouch that field tested positive for the presence of marijuana; (b) mail in the names of Richard Mastroeni and his wife, and (c) a propane gas bill in the name of Richard Mastroeni.

52.    On April 26, 2012, law enforcement agents executed a search warrant, authorized by the Honorable William D. Wall, at 108 Maple Street.  Law enforcement agents recovered approximately $8000 to $10,000 in cash.

**The Marijuana Grow House at 26 Ashton Road and the Adjoining Vacant Lot**

18

53.   CS1 stated that he/she lived at 26 Ashton Road for approximately three years, in or about and between September 2005 and December 2008, during which time John P. Franz oversaw continuous marijuana production at the location.

54.   CS1 identified 26 Ashton Road as a residence that John P. Franz owned and controlled during his/her tenure as a worker at the premises in or about and between September 2005 and December 2008. An analysis of records on file with the Suffolk County Clerk's Office reflects that Franz became the titled owner of 26 Ashton Road and the adjoining Ashton Road Lot on September 22, 2005. CS1 described 26 Ashton Road as containing a large marijuana manufacturing operation in its basement that Franz has operated from approximately September 2005 through and including at least approximately December 2008, when CS1 last worked at the premises.

55.   CS1 advised that in or about September 2005, CS1 moved into 26 Ashton Road and started setting up the basement in preparation for the marijuana plants. Specifically, CS1 painted the walls white and set up numerous tables. According to CS1, John P. Franz gave CS1 grow equipment, which included lights, light hoods, fans and water pumps.

56.   On April 26, 2012, law enforcement officers executed a search warrant issued by the Honorable William D. Wall on April 13, 2012, at the 26 Ashton Road premises. The search of the premises uncovered an active marijuana grow house operation in the basement of the premises with approximately 1,500 marijuana plants. The search also uncovered approximately 18 spackle buckets in the basement of the premises. In each bucket, officers found numerous clear plastic baggies containing a green leafy substance that, based upon my training and